**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                                       )<br>)<br>MARK R. DAIN                               )<br>)<br>     Defendant                          )<br>——————————————————— ) | Case No: 1:13-CR-00283-TSE |

## DEFENDANT'S POSITION ON SENTENCING

Defendant Mark R. Dain, by and through counsel, hereby submits his Position on Sentencing and respectfully requests a sentence below the advisory guideline range for the reasons set forth below.

## PRE-SENTENCE INVESTIGATION REPORT

Defendant withdraws his objections to the Pre-Sentence Investigation Report, with the exception of the probation officers' recommendation that Mr. Dain receive a 3-level enhancement for his role in the offense. The Government is not seeking such an enhancement and this enhancement was not given to two other TRM officers in a managerial role who have previously been sentenced (Michael McCracken – Chief Financial Officer and Cari Deuterman – Vice President). Despite withdrawing the remaining objections, Mr. Dain argues that the issues raised in his objections should be considered as mitigating factors at sentencing.

## SENTENCING GUIDELINES

The Government and the Defendant agree that the sentencing level is 26 with a corresponding advisory guideline range of 63-78 months. This is set forth in the Plea Agreement signed by Mr. Dain on June 22, 2013.

The Pre-Sentence Investigation Report recommends a 3-level enhancement based on Mr. Dain's role in the offense. Mr. Dain objects to this enhancement and the Government has indicated that it is not pursing this enhancement. Should this enhancement apply, the advisory guideline range would be 87-108 months.

The sentencing guidelines are advisory, not mandatory. <u>United States v. Booker</u>, 543 U.S. 220, 125, S.Ct. 738 (2005). In addition to the sentencing guidelines, the court must also consider the sentencing factors set forth in 18 U.S.C. §3553.

Based on the combination of factors set forth herein and in the sealed filings, Mr. Dain is respectfully requesting that this Court impose a sentence of time served and supervised release, or alternatively period of incarceration of less than 12 months, with any portion of that sentence beyond time served to be served in home confinement and/or community confinement.

## SENTENCING FACTORS UNDER 18 U.S.C. §3553

18 U.S.C §3553 sets forth the factors the Court must considering when imposing a sentence and require the Court to impose a sentence sufficient, but not greater than necessary, to comply with the policies set forth in paragraph 18 U.S.C. §3553(a)(2).

I.  **<u>The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>**

A. <u>History and Characteristics of Mark Dain</u>

A portrait of Mr. Dain's life will show a very different person before and after 2010. Prior to 2010, Mr. Dain admits he lived an immoral life, both personally and professionally. He made many mistakes. He broke the law. His actions hurt people. In April 2010, that all changed, and Mr. Dain changed. He saw the mistakes he had made and the harm it had caused

people, and he wanted to live a better life. He wanted to make amends for the poor choices he had made.

Mr. Dain began seeking Christian counseling. He became a born-again Christian and now lives his everyday life by the teachings of Jesus. This is evident not just by his words, but by his actions. After Mr. Dain turned himself in to begin serving his sentence, he immediately started an inmate-led bible study group at the Alexandria jail. This group started with 2 people and within 6 weeks had grown to more than 30 people. When Mr. Dain completes his term of incarceration, he plans to pursue a career in the ministry to share his story with hopes of inspiring others to live a virtuous life.

Mr. Dain is a family man. He is married with three young children. The letters submitted by his wife and other family and friends outline the incredible support he has provided to her and their family over the last few years. His young children need their father home to provide financial, emotional and spiritual support for them. And while providing for his family is always his top priority, Mr. Dain did not hesitate to put his family obligations on hold to assist the government over the last 3.5 years. Mr. Dain was answering phone calls while at his mother's death bed. He would drop everything if the government called and be there at a moment's notice. His actions far exceeded any obligation he had to cooperate with the government. He sacrificed his time to assist the government because it was the right thing to do.

The people who know him best – those who have submitted letters on his behalf – acknowledge the man that Mr. Dain was prior to 2010, but more importantly, they have stuck by his side and now put their support behind Mr. Dain and speak highly of the man he has become. They speak of the transformation he has undergone from the person who committed crimes at TRM to the devout Christian and family man they know now.

The people who know the post-2010 Mark Dain are also willing to give him a second chance and an opportunity to earn an honest living upon his release from incarceration. He has two open employment offers which will be available upon his release or as part of a work-release program if he is otherwise eligible. See Exhibit A. These positions will allow Mr. Dain to financially provide for his family while pursuing his ministry training and working towards becoming an ordained minister and will also allow him to begin making restitution payments.

B. Nature of the Offense

Mr. Dain was part of the conspiracy to commit bank fraud by submitting false loan applications to these banks; but many parts of the scheme were put into place by others. The developer, R.A. North, hand-selected lenders, appraisers and settlement agents who were complicit in these crimes. TRM was directed to use these specific people to ensure that the transactions would close. R.A. North set comps and established the sales prices that TRM would use to sell these lots. R.A. North taught TRM how to do simultaneous closings, where the lot would be sold from R.A. North to TRM and again from TRM to an investor at the same time. There is no denying Mr. Dain and TRM's role in these transactions, but it is unfair to overstate his role based on being an owner of TRM without looking at the broader context of the fraud and the other players involved in these transactions.

Mr. Dain admits his illegal conduct with TRM and accepts responsibility for his actions; however he did not engage in this conduct with the intention of harming anyone. Based on representations by the developers, Mr. Dain and TRM were led to believe that this would be a win/win situation for everyone involved. The developer had made verbal promises to re-purchase lots so that no investors were harmed. The banks had developed these "liar loans" to allow people to qualify for risky loans so that the banks could increase their portfolio, and in

4

many cases, immediately package and sell these loans as mortgage backed securities. Everyone was supposed to make money, and everyone involved broke the law in order to do so.

When the real estate market crashed, it exposed many of the illegal practices that had been occurring at TRM and elsewhere prior to 2008. Massive litigation ensued against all parties, resulting in substantial civil settlements to victims and other litigation that continues to this day. Government investigations were launched against the developers, and while they have not been charged criminally, they have entered into at least one civil consent order with a government agency and have agreed to pay over $2,000,000 in fines. The government has cracked down on the banking industry for fraudulent practices, imposing enormous fines and passing regulation to ensure that these actions do not happen again.

None of this excuses Mr. Dain's illegal actions; however the nature and circumstances of this offense cannot be viewed in a vacuum. Mr. Dain's actions were condoned and encouraged by everyone involved in these transactions, including developers, lenders, appraisers, and purchasers – all of whom should be standing before this Court answering for their actions.

## II.     <u>The Need to Impose a Sentence Sufficient, But Not Greater Than Necessary</u>

Under 18 U.S.C. §3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 18 U.S.C. §3553(a)(2), which are as follows:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Conspiracy to commit bank fraud is a serious offense. Mr. Dain understands this and has accepted responsibility for his actions and the actions of others working at TRM. He has pled guilty to a felony charge which will eliminate any possibility of him working in the mortgage or banking industry in the future. The deterrent effect of this is substantial both to Mr. Dain and to any other person working in the banking or mortgage industry – if you violate the law, you will be punished and you will never work in this industry again.

Given Mr. Dain's lack of any criminal record prior to this offense and his spectacular rehabilitation both prior to and after this plea, there is very little chance of recidivism; however this Court and the public have the additional assurance that Mr. Dain will never find himself in a position to commit this type of crime again due to his disqualification from the mortgage and banking industry.

## III.   The Kinds of Sentences Available

The agreed-upon sentencing guidelines place Mr. Dain in Zone D, which states that the minimum term shall be satisfied by a sentence of imprisonment. U.S.S.G. §5C1.1. On July 17, 2013, Mr. Dain voluntarily turned himself in following his guilty plea rather than remaining out on pre-trial release. To date he has been incarcerated approximately three (3) months.

According to the January 2009 United States Sentencing Commission report entitled "Alternative Sentencing in the Federal Criminal Justice System," 94.6% of Zone D offenders receive a sentence of prison only. See p. 4, Table 2 (Attached hereto as Exhibit B). The remaining 5.4% of offenders receive some alternative sentence as follows:

-   2.1 % receive a prison/community confinement split sentence

- 1.8 % receive a probation and confinement split sentence
- 1.5 % receive a sentence of probation only

Given the combination of factors to support a departure from the guidelines, including Mr. Dain's overwhelming rehabilitation and change of life, acceptance of responsibility, minimal chance of recidivism and 41 months of cooperation with the government, we respectfully suggest that Mr. Dain has shown that he should be considered among the 5.4% of offenders who receive an alternative sentence as a Zone D offender.

Mr. Dain has already served approximately three (3) months in prison. We are asking that Mr. Dain be released from prison with credit for time served and be subject to a period of supervised release not to exceed three (3) years. Alternatively, we are asking that Mr. Dain be allowed to serve any sentence in excess of 3 months through home confinement and/or community confinement.

## IV.   The Need to Avoid Unwarranted Sentence Disparities

The goal of the federal sentencing guidelines is to ensure uniformity in sentencing between people who have committed the same or similar offenses. In the TRM case[1], the following people have already been sentenced.

Cari V. Deuterman (1:10CR00246): Judge Cacheris sentenced Ms. Deuterman to a 24-month term of imprisonment to be followed by a 3-year term of supervised release. She was also directed to pay restitution in the amount of $1,958,000. On February 22, 2013, the term of incarceration was reduced to 12 months. Ms. Deuterman has already been released from BOP custody.

---

[1] The Pre-Sentence Investigation Report also included Aaron Hernandez (1:10CR00175) as a Co-Defendant/Related Case; however there are substantial differences between Mr. Hernandez's conduct and the TRM cases. While Mr. Hernandez's company could be described as a spin-off from TRM and Mr. Hernandez engaged in some similar illegal conduct, he also engaged in far more serious conduct including stealing identities. His sentence of 63 months (later reduced to 40 months) reflects the more serious nature of his criminal conduct and for that reason should not be given as much weight as the sentences of Deuterman, McCracken and Tonkinson, all of whom worked with TRM and engaged in the same or very similar conduct to Mr. Dain.

<u>Michael John McCracken (1:11CR00134)</u>: Michael McCracken pled guilty to (1) Conspiracy to Commit Bank Fraud and Mail Fraud; and(2) Possession of Firearms and Ammunition In or Affecting Commerce by a Convicted Felon. Judge Ellis sentenced Mr. McCracken to a 40 month term of imprisonment to be followed by a 3-year term of supervised release and ordered him to pay restitution totaling $9,342,950 for Count I. On Count II, Mr. McCracken received a 30-month term of imprisonment to be followed by a 3-year term of supervised release. These terms will run concurrently. Mr. McCracken will be released next month (November 3, 2013).

<u>Christopher E. Tonkinson (1:10CR00361)</u>: Judge Hilton sentenced Mr. Tonkinson to a 24-month term of imprisonment to be followed by a 3-year term of supervised release. He was also directed to pay restitution in the amount of $629,400. Mr. Tonkinson has already been released from BOP custody.

Mr. Tonkinson's sentencing guidelines were 30-37 months. He was sentenced to 24 months – a 20% departure from the low end of the guidelines.

Cari Deuterman was a Vice-President at TRM. Ms. Deuterman's sentencing guidelines were 33-41 months. She was sentenced to 24 months – a 25% departure from the low end of the guidelines.

Michael McCracken was the Chief Financial Officer for TRM. Furthermore, he was a convicted felon prior to his involvement with TRM and was in possession of firearms, which led to the second charge against him. Mr. McCracken's guidelines were 57-71 months. Despite his prior felony and his significant role at TRM, he was sentenced to 40 months[2] – a 30% departure from the low end of the guidelines.

---

[2] Mr. McCracken was also sentenced to 30 months for the 2nd charge, but that time runs concurrently.

None of the sentences identified above give the Co-Defendants credit for any cooperation with the government, although they did receive a 3 level reduction for acceptance of responsibility. Mr. Dain should receive a similar departure below the low end of the sentencing guidelines *prior to* any benefit he receives as a result of his cooperation with the government.

## V.    The Need to Provide Restitution to any Victims

Defendant has withdrawn his objections to the Pre-Sentence Investigation Report regarding restitution; however asks that if this Court imposes restitution that it be no greater than the actual losses sustained by any banks and that restitution be joint and several with the other co-defendants.

Defendant further argues that the bank's role in this offense be considered a mitigating factor under 18 U.S.C. 3553(b) for both its complicity and involvement in the falsifying of loan applications and the bank's creation of a stated income/stated asset ("liar loan") product that removed any safeguards to detect and/or prevent fraud in order to maximize profits for the banks.

## CONCLUSION

Wherefore, Defendant Mark R. Dain, by and through counsel, respectfully asks for a sentence of time served with a period of supervised release not to exceed 3 years. Alternatively we ask for a sentence not to exceed 1 year and 1 day, with any prospective time to be served on home confinement or community confinement, followed by a period of supervised release not to exceed 3 years.

Mr. Dain is not financially able to pay a fine and we ask the Court not impose a fine in this case. As for restitution, we respectfully ask the Court to impose a restitution figure that accurately reflects any actual losses sustained by the banks in these transactions.

Respectfully submitted,
Mark Dain
By Counsel

/s/ Michael T. Pritchard
Michael T. Pritchard, Esq. (VA Bar #65846)
Hogan & Pritchard, PLLC
11350 Random Hills Road, Suite 800
Fairfax, VA 22030
Ph:  703-352-7034
Fax: 703-591-3049
mpritchard@thehplawfirm.com
*Counsel for Mark R. Dain*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2013, I electronically filed the foregoing
*Defendant's Sentencing Memorandum* with the Clerk of the Court using the CM/ECF system
which sent notification of such filing to the following:

Mark D. Lytle
Assistant U.S. Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA  22314
 T. 703-299-3768
F. 703-299-3981
*Mark.Lytle@usdoj.gov*

/s/ Michael T. Pritchard
Michael T. Pritchard, Esq.